# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LYNN CASTILLO | § | |
| | § | |
| LORA MORALES, INDIVIDUALLY AND | § | |
| A/N/F OF JUAN BARRON, A MINOR | § | CIVIL ACTION NO. 2-05 CV 171-TJW |
| | § | Hon. Judge Ward |
| JAMES C. BRITTAIN | § | Jury Trial Requested |
| | § | |
| NICASIO CASTILLO | § | |
| | § | |
| VS. | § | |
| | § | |
| FORD MOTOR COMPANY, | § | |
| MAZDA MOTOR CORPORATION, and | § | |
| TRW AUTOMOTIVE U.S. L.L.C. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO SAID HONORABLE COURT:

COME NOW CHRISTOPHER LYNN CASTILLO, LORA MORALES,

INDIVIDUALLY AND A/N/F OF JUAN BARRON, A MINOR, JAMES C. BRITTAIN AND

NICASO CASTILLO hereinafter referred to as Plaintiffs, complaining of Ford Motor Company,

Mazda Motor Corporation, and TRW AUTOMOTIVE U.S. L.L.C., and for cause of action,

would respectfully show the Court and jury the following:

### PARTIES

1.0    Plaintiffs are citizens and residents of the Eastern District within the State of Texas.

2.0    Defendant, Ford Motor Company is a foreign corporation, duly formed and existing under

the laws of the State of Delaware.  Defendant is duly authorized to transact business in the State

of Texas, and may be served by serving its ATTORNEY OF RECORD, Ronald Wamstead,

THOMPSON COE COUSINS & IRONS, LLP, 701 Brazos, Suite 1500, Austin, Texas 78701.

3.0    Defendant Mazda Motor Corporation is a foreign national corporation which may be

served through the Hague Convention by serving its President, Hisakazu Imaki at 3-1 Sinchi,

Fuchu-cho, Aki-gun, Hiroshima, Japan 730-8670.

4.0    Defendant TRW AUTOMOTIVE US L.L.C., hereafter called T.R.W. Corporation is a

foreign Limited Liability Company and successor in interest to TRW, Inc. n/k/a Northrop

Grumman Space and Mission Systems Corp.  TRW AUTOMOTIVE US L.L.C. may be served

through its President at 12001 Tech Center Drive # 3N, Livonia, MI 48150-2122

## JURISDICTION AND VENUE

5.0    This Court has jurisdiction under 28 U.S.C. 1332(a) because the case involves a

controversy between citizens of different states or nations and the amount in controversy is

greater than $75,000.00, as to each claim excluding interest and costs.

6.0    Venue is proper in the United States District Court for the Eastern District of

Texas under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions occurred

in Nacogdoches, Texas, a place within the Eastern District of Texas.

## FACTUAL ALLEGATION

7.0    On or about May 9, 2003 Plaintiffs were involved in a motor vehicle accident while

operating a 1995 Ford Escort driven by Nicasio Castillo and owned by Tina Garrett. Plaintiffs

were seriously injured.  The steering/suspension in the vehicle failed, causing the driver to lose

control of the vehicle and the vehicle rolled.  In the collision, all of the seatbelts in said vehicle

2

malfunctioned and or failed. Mazda Motor Corporation designed, developed, and, on affirmation and belief, produced the strut and suspension system for the CT-20 vehicle program encompassing the 1991 through 1996 model year Ford Escort vehicles. Ford Motor Company participated with Mazda in such development, and was responsible for the outsourcing of parts, and for the assembly of the vehicles. TRW Corporation designed the automatic seatbelt tracks in conjunction with Mazda, and was the outsource supplier of the other restraint components to Ford based on Mazda Specifications. Mazda and Ford each participated in safety certification of the vehicle to D.O.T. FMVSS standards.

## NEGLIGENCE-FORD MOTOR COMPANY

8.0    Ford Motor Company was negligent in several respects regarding the suspension system. It was, or should have been foreseeable to Ford that stresses and strains would be placed on the suspension system. As such, Ford, as the manufacturer of the vehicle, had the duty to oversee the design of the vehicle to withstand the forces which forseeably would be applied to the suspension generally, and the suspension component parts specifically. In addition, Ford had the responsibility to construct the suspension in such a manner and or with such materials as to withstand the foreseeable forces which would be applied to the suspension system in its foreseeable uses. Ford failed in such duty with respect to the design and/or construction of the strut, and the means by which the strut as attached in the vehicle in question. The strut was not designed and/or constructed in such a fashion as it would endure the foreseeable stresses which would be placed upon it in foreseeable use. The left front strut failed at the point of attachment to the strut tower with resulting loss of steering and braking control of the vehicle, proximately causing the collision which is the basis for this suit. Ford was negligent in each of the following

3

particulars:  (1) failing to attach the strut adequately at the location where it is attached to the strut tower; failing to include in its design or manufacture a part to prevent the strut from severing from its mounting to the strut tower; failing to warn its customers of the possibility and or likelihood that the strut would or could become severed from the strut tower; failing to utilize adequate materials to attach the strut to the strut tower. Each such act of negligence, singularly, or in combination with one or more other acts constitutes negligence which was a proximate cause of the injuries and damages suffered by the Plaintiffs herein for which adequate compensation is sought through this lawsuit.

9.0     Ford Motor Company was also negligent with respect to the seatbelts in the vehicle.  Ford Motor Company had a legal duty to provide seatbelt and occupant restraints which complied with FMVSS 208, but in addition, that were safe and effective to restrain the occupants within the passenger compartment of the vehicle in the event of a collision.  The seatbelts in the subject vehicle were ineffective and failed.  The automatic driver-shoulder-belt became completely dislodged from its track, resulting in glass impact injuries to the head of the driver, Nicasio Castillo.  The passenger automatic shoulder-belt and seatbelt failed to restrain the passenger, J.C. Brittain within the vehicle and he was ejected from the vehicle.  The right rear lap-shoulder combination inertia reel device failed, allowing the right rear passenger, Christopher Castillo to become partially ejected from the vehicle.  The left rear lap-shoulder combination inertia reel device failed as well, allowing the right rear passenger, Juan Barron to have impact with the internal hard components and glass area of the vehicle.  Ford was negligent in one or more respects regarding the front seatbelt assemblies:  Ford failed in its legal duty to anchor the belts in such a manner that the belts would withstand the forces expected to occur in a foreseeable

4

collision event; Ford failed to design and construct its seat belt retraction devices in such a

manner as to prevent excessive slack in the event of collisions, resulting in failure of its seatbelt

system inertia reel devices to maintain occupants restrained within the vehicle.  Such negligence

was a proximate cause of the injuries and damages suffered by the Plaintiffs herein for which

adequate compensation I sought by this suit.

10.0    Defendant, Ford Motor Company was negligent in failing to make a proper inspection of

the vehicle and the parts attached thereto or that functioned therewith, and of delivering said

vehicle to Tina Garrett in a dangerous, defective and unsafe condition; in failing to properly

maintain them; and in failing to provide Plaintiffs with an adequate warning of the unsafe and

defective condition of the aforementioned vehicle, which condition was known or in the exercise

of ordinary care should have been known by said Defendant Motor Company.  Such actions on

behalf of Defendant Motor Company were a proximate and producing cause of the Plaintiffs'

damages and injuries.

### STRICT PRODUCT LIABILITY-FORD MOTOR COMPANY

11.0    The aforementioned vehicle and the parts attached thereto or that functioned therewith,

were designed, manufactured, assembled, inspected, supplied, sold, leased or otherwise provided

by Defendant, Ford Motor Company and were placed into the stream of commerce or carried

through the stream of commerce by Defendant, Ford Motor Company.  At such time the vehicle

and the parts attached thereto or that functioned therewith were defective in manufacture and

assembly and unreasonably dangerous as that term is defined by law within Section 402A of the

RESTATEMENT (SECOND) OF TORTS.  Said vehicle reached Tina Garrett without

substantial change in its condition from the time it was originally manufactured, assembled or

5

introduced into the stream of commerce. Further, said defects were a producing cause of the Plaintiffs' damages and injuries.

### 402(a) Design Defect

12.0    The aforementioned vehicle and the parts attached thereto or that functioned therewith were manufactured by Defendant, Ford Motor Company and sold by Defendant, Ford Motor Company and were defective at the time they were placed into or carried through the stream of commerce; and were unreasonably dangerous as designed, taking into consideration the utility of the products and the risk involved in their use. The product was defectively designed so as to render it unreasonably dangerous to its occupants. A safer alternative design would have prevented or lessened Plaintiffs' damages. A safer alternative design would have prevented or significantly reduced the risk of the Plaintiffs' injuries, without substantially impairing the product's utility. Furthermore, a safer alternative design was economically and technologically feasible at the time the product left the control of Defendant, Ford Motor Company by the application of existing or reasonably achievable scientific knowledge. Such defective design was a producing cause of the Plaintiffs' damages and injuries.

### 402(a) Failure to Warn

13.0    The aforementioned vehicle and the parts attached thereto or that functioned therewith, as designed and manufactured and sold by Defendant, Ford Motor Company, were capable of causing serious injuries while in use, and this was known, or in the exercise of ordinary care should have been known by Defendant, Ford Motor Company and was reasonably foreseeable to said Defendant at the time of sale. In spite of this, Defendant, Ford Motor Company failed to furnish an adequate warnings and instructions for the safe use of the aforementioned vehicle and

the parts attached thereto. Such failure rendered the aforementioned vehicle and the parts attached thereto defective inasmuch as they were unreasonably dangerous as marketed. Said defective condition was a producing cause of the Plaintiffs' damages and injuries.

<u>402(a) Manufacturing Defect</u>

14.0    The aforementioned vehicle and the parts attached thereto or that functioned therewith were manufactured by Defendant, Ford Motor Company and sold by Defendant, Ford Motor Company and were defective at the time they were placed into or carried through the stream of commerce; and were unreasonably dangerous as designed, taking into consideration the utility of the products and the risk involved in their use. The strut material and construction was defective in that it failed in normal and anticipated use at the point where the left strut is attached to the strut tower. The left and right front automatic shoulder belts failed due to defects in construction and materials. The inertial reel seatbelt tension devices failed due to defects in materials and or manufacture. Such defects, individually and or in accumulation of one another was/were a producing cause of the Plaintiffs' damages and injuries.

<u>NEGLIGENCE-MAZDA MOTOR CORPORATION</u>

15.0    Mazda Motor Corporation was negligent in several respects regarding the suspension system and occupant restraints. It was foreseeable to Mazda that stresses and strains would be placed on the suspension system. As such, Mazda had the duty to design and specify construction of the suspension in such a manner as to withstand the foreseeable forces which would be applied to the suspension system in its foreseeable uses. Mazda failed in such duty with respect to the design and or specifications for construction of the strut, and the means by which the strut as attached in the vehicle in question in that the strut was not designed and

constructed in such a fashion as it would endure the foreseeable stresses which would be placed upon it in foreseeable use, resulting in the failure of the left strut on the vehicle in question and loss of steering and braking control of the vehicle which resulted in the collision which is the basis for this suit. Mazda was negligent in each of the following particulars: failing to require attachment of the strut adequately at the location where it is attached to the strut tower; failing to include in its design or manufacture a part to prevent the strut from severing from its mounting to the strut tower; failing to warn its customers of the possibility and or likelihood that the strut would or could become severed from the strut tower; failing to utilize or specify adequate materials to attach the strut to the strut tower. Each such act of negligence, singularly, or in combination with one or more other acts constitutes negligence which was a proximate cause of the injuries and damages suffered by the Plaintiffs herein for which adequate compensation is sought through this lawsuit.

16.0    Mazda Motor Corporation was also negligent with respect to the seatbelts in the vehicle. Mazda Motor Corporation had a legal duty to design and specify seatbelt and occupant restraints which complied with FMVSS 208, but in addition, that were safe and effective to restrain the occupants within the passenger compartment of the vehicle in the event of a collision. The seatbelts in the subject vehicle were ineffective and failed. The automatic driver-shoulder-belt became completely dislodged from its track, resulting in glass impact injuries to the head of the driver, Nicasio Castillo. The passenger automatic shoulder-belt and seatbelt failed to restrain the passenger, J.C. Brittain within the vehicle and he was ejected from the vehicle. The right rear lap-shoulder combination inertia reel device failed, allowing the right rear passenger, Christopher Castillo to become partially ejected from the vehicle. The left rear lap-shoulder combination

inertia reel device failed as well, allowing the right rear passenger, Juan Barron to have impact with the internal hard components and glass area of the vehicle. Mazda was negligent in one or more respects regarding the front seatbelt assemblies: Mazda failed in its legal duty to specify anchorage of the belts in such a manner that the belts would withstand the forces expected to occur in a foreseeable collision event; Mazda failed to design and construct its seat belt retraction devices in such a manner as to prevent excessive slack in the event of collisions, resulting in failure of its seatbelt system inertia reel devices to maintain occupants restrained within the vehicle. Such negligence was a proximate cause of the injuries and damages suffered by the Plaintiffs herein for which adequate compensation I sought by this suit.

## STRICT PRODUCT LIABILITY-MAZDA MOTOR CORPORATION

16.0     The aforementioned vehicle and the parts attached thereto or that functioned therewith, were designed, or otherwise provided to the Defendant, Ford Motor Company by Mazda Motor Corporation and were placed into the stream of commerce or carried through the stream of commerce in such form. At such time the vehicle and the parts attached thereto or that functioned therewith were defective in manufacture and assembly and unreasonably dangerous as that term is defined by law within Section 402A of the RESTATEMENT (SECOND) OF TORTS. Said vehicle reached Tina Garrett without substantial change in its condition from the time it was originally manufactured, assembled or introduced into the stream of commerce. Further, said defects were a producing cause of the Plaintiffs' damages and injuries.

## 402(a) Design Defect

17.0     The aforementioned vehicle and the parts attached thereto or that functioned therewith were designed by Defendant, Mazda Motor Corporation in conjunction or on behalf of Ford

Motor Company and sold by Defendant, Ford Motor Company and were defective at the time they were placed into or carried through the stream of commerce; and were unreasonably dangerous as designed, taking into consideration the utility of the products and the risk involved in their use. The product was defectively designed so as to render it unreasonably dangerous to its occupants. A safer alternative design would have prevented or lessened Plaintiffs' damages. A safer alternative design would have prevented or significantly reduced the risk of the Plaintiffs' injuries, without substantially impairing the product's utility. Furthermore, a safer alternative design was economically and technologically feasible at the time the design was commissioned by Mazda to the Defendant Ford, and as well and thereafter until the product left the control of Defendant, Ford Motor Company by the application of existing or reasonably achievable scientific knowledge. Such defective design was a producing cause of the Plaintiffs' damages and injuries.

### 402(a) Failure to Warn

17.0    The aforementioned vehicle, as designed by Mazda for the Defendant, Ford Motor Company, were capable of causing serious injuries while in use, and this was known, or in the exercise of ordinary care should have been known by Defendant, Mazda Motor Corporation and was reasonably foreseeable to said Defendant at the time of design. In spite of this, Defendant, Mazda failed to furnish an adequate warning that the use of the aforementioned vehicle and the parts attached thereto could cause serious bodily injuries, and further failed to provide adequate instructions for their safe upkeep and use. Such failure rendered the aforementioned vehicle and the parts attached thereto defective inasmuch as they were unreasonably dangerous as marketed. Said defective condition was a producing cause of the Plaintiffs' damages and injuries.

<u>402(a) Manufacturing Defect</u>

18.0     On affirmation and belief, the aforementioned vehicle and the parts attached thereto or

that functioned therewith were manufactured by Defendant, Mazda Motor Corporation and sold

by Defendant, Ford Motor Company and were defective at the time they were placed into or

carried through the stream of commerce; and were unreasonably dangerous as designed, taking

into consideration the utility of the products and the risk involved in their use.  The strut material

and construction was defective in that it failed in normal and anticipated use at the point where

the left strut is attached to the strut tower.  The left and right front automatic shoulder belts failed

due to defects in construction and materials.  The inertial reel seatbelt tension devices failed due

to defects in materials and or manufacture.  Such defects, individually and or in accumulation of

one another was/were a producing cause of the Plaintiffs' damages and injuries.

19.0     Plaintiffs have suffered injuries as a result of the negligence of Defendant, Mazda Motor

Corporation.  Therefore, Plaintiffs seek damages in excess of the minimum jurisdictional limits

of this Honorable Court.

<u>NEGLIGENCE-TRW CORPORATION</u>

20.0     TRW Corporation was negligent in several respects regarding the seatbelts in the

vehicle. TRW Corporation actively participated in the design of the automatic seatbelts in the

vehicle in question.  TRW had a legal duty to design and manufacture the seatbelt and occupant

restraints which complied with FMVSS 208, but in addition, that were safe and effective to

restrain the occupants within the passenger compartment of the vehicle in the event of a collision.

The seatbelts in the subject vehicle were ineffective and failed.  The automatic driver-shoulder-

belt became completely dislodged from its track, resulting in glass impact injuries to the head of

the driver, Nicasio Castillo. The passenger automatic shoulder-belt and seatbelt failed to restrain the passenger, J.C. Brittain within the vehicle and he was ejected from the vehicle.

21.0     In addition, TRW manufactured and supplied the component parts for the remainder of the seatbelt occupant restraints. The right rear lap-shoulder combination inertia reel device failed, allowing the right rear passenger, Christopher Castillo to become partially ejected from the vehicle. The left rear lap-shoulder combination inertia reel device failed as well, allowing the right rear passenger, Juan Barron to have impact with the internal hard components and glass area of the vehicle. TRW was negligent in one or more respects regarding the front seatbelt assemblies: TRW failed in its legal duty to specify anchorage of the belts in such a manner that the belts would withstand the forces expected to occur in a foreseeable collision event; TRW failed to design and construct its automatic seat belt tracks in such a manner as to prevent jamming and failure of the track mechanism; TRW failed to specify materials composition for its automatic seatbelt tracks of material(s) sufficient to withstand foreseeable forces which would be placed on the track in the event of collision; TRW failed to prevent excessive slack in the inertia reel devices in the event of collisions, resulting in failure of its seatbelt system inertia reel devices to maintain occupants restrained within the vehicle. Such negligence was a proximate cause of the injuries and damages suffered by the Plaintiffs herein for which adequate compensation I sought by this suit.

## STRICT PRODUCT LIABILITY-TRW CORPORATION

22.0     The aforementioned components of the seatbelt occupant restraints, were designed, or otherwise provided to the Defendant, Ford Motor Company by TRW Corporation and were placed into the stream of commerce or carried through the stream of commerce in such form. At

such time the vehicle and the parts attached thereto or that functioned therewith were defective in

manufacture and assembly and unreasonably dangerous as that term is defined by law within

Section 402A of the RESTATEMENT (SECOND) OF TORTS. Said vehicle reached Tina

Garrett without substantial change in its condition from the time it was originally manufactured,

assembled or introduced into the stream of commerce. Further, said defects were a producing

cause of the Plaintiffs' damages and injuries.

### 402(a) Design Defect

23.0    The aforementioned vehicle and the parts attached thereto or that functioned therewith

were defective at the time they were placed into or carried through the stream of commerce; and

were unreasonably dangerous as designed, taking into consideration the utility of the products

and the risk involved in their use. The product was defectively designed so as to render it

unreasonably dangerous to its occupants. A safer alternative design would have prevented or

lessened Plaintiffs' damages. A safer alternative design would have prevented or significantly

reduced the risk of the Plaintiffs' injuries, without substantially impairing the product's utility.

Furthermore, a safer alternative design was economically and technologically feasible at the time

the component parts were tendered to the Defendant Ford, and as well and thereafter until the

product left the control of Defendant, Ford Motor Company by the application of existing or

reasonably achievable scientific knowledge. Such defective design was a producing cause of the

Plaintiffs' damages and injuries.

### 402(a) Failure to Warn

24.0    The aforementioned components and the parts attached thereto or that functioned

therewith, as designed by Mazda and TRW for the Defendant, Ford Motor Company, were

13

capable of causing serious injuries while in use, and this was known, or in the exercise of

ordinary care should have been known by Defendant, TRW or was reasonably foreseeable to said

Defendant at the time of design.  In spite of this, Defendant, TRW failed to furnish an adequate

warning that the use of the aforementioned vehicle and the parts attached thereto could cause

serious bodily injuries, and further failed to provide adequate instructions for their safe use.  Such

failure rendered the aforementioned vehicle and the parts attached thereto defective inasmuch as

they were unreasonably dangerous as marketed.  Said defective condition was a producing cause

of the Plaintiffs' damages and injuries.

402(a) Manufacturing Defect

25.0     The aforementioned vehicle and the parts attached thereto or that functioned therewith

were manufactured by Defendant, TRW Corporation and thereafter sold into the stream of

commerce by Defendant, Ford Motor Company and were defective at the time they were placed

into or carried through the stream of commerce; and were unreasonably dangerous as designed,

taking into consideration the utility of the products and the risk involved in their use.  The left

and right front automatic shoulder belts failed due to defects in construction and materials.  The

inertial reel seatbelt tension devices failed due to defects in materials and or manufacture.  Such

defects, individually and or in accumulation of one another was/were a producing cause of the

Plaintiffs' damages and injuries.

V. DAMAGES

26.0     Plaintiffs have suffered injuries as a result of the negligence of Defendant, TRW

Corporation.  Therefore, Plaintiffs seek damages in excess of the minimum jurisdictional limits

of this Honorable Court.

14

27.0   Plaintiffs seek the following elements of damages, provided by the law of the State of Texas, in the full sum of money which will fairly and reasonably compensate them for the damages and losses both incurred in the past and to be incurred in the future.

## PAST DAMAGES OF NICASIO CASTILLO

28.0   From the date of the injury made the subject of this suit, until the time of trial of this cause of action before a jury, the elements of damages which Plaintiff, Nicasio Castillo requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.   The physical pain which he has suffered from the date of injury until the time of trial.

2.   The mental anguish which he has suffered from the date of injury until the time of trial.

3.   The reasonable medical expenses necessarily incurred in the treatment of his injuries from the date of injury until the time of trial.

4.   The loss of earnings and earning capacity sustained by him from the date of injury until the time of trial.

5.   The physical impairment and disability suffered by him and the resulting inability of Mr. Nicasio Castillo to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.   The disfigurement which he has suffered from the date of injury until the time of trial.

7.   The loss of household services which he has suffered from the date of injury until the time of trial.

8.   The reasonable value of nursing services which he has received from the date of injury until the time of trial.

## FUTURE DAMAGES OF NICASIO CASTILLO

29.0    From the time of the trial of this cause of action and in the future for the balance of his

lifetime, the elements of damages which Plaintiff, Nicasio Castillo requests this Court and jury to

consider, separately and individually on his behalf, for the purpose of determining the full sum of

money that will fairly and reasonably compensate him for each element are as follows:

1.    The physical pain which he will suffer throughout the remainder of his life.

2.    The mental anguish which he will suffer throughout the remainder of his life.

3.    The amount of reasonable medical expenses which he will necessarily incur in the
treatment of injury throughout the remainder of his life.

4.    The loss or reduction of earning capacity which he will suffer throughout the
remainder of his life.

5.    The physical impairment and disability which he will suffer and the resulting
inability of Mr. Nicasio Castillo to engage in those activities and perform those tasks and
services which he would have been able to do but for this tragic incident.

6.    The disfigurement which he will suffer throughout the remainder of his life.

7.    The loss of household services which he will suffer throughout the remainder of
his life.

8.    The reasonable value of nursing services which he will need throughout the
remainder of his life.

## PAST DAMAGES OF JAMES C. BRITTAIN

30.0    From the date of the injury made the subject of this suit, until the time of trial of this

cause of action before a jury, the elements of damages which Plaintiff, James C. Brittain requests

this Court and jury to consider, separately and individually on his behalf, for the purpose of

determining the full sum of money that will fairly and reasonably compensate him for each

element are as follows:

16

1.    The physical pain which he has suffered from the date of injury until the time of trial.

2.    The mental anguish which he has suffered from the date of injury until the time of trial.

3.    The reasonable medical expenses necessarily incurred in the treatment of his injuries from the date of injury until the time of trial.

4.    The loss of earnings and earning capacity sustained by him from the date of injury until the time of trial.

5.    The physical impairment and disability suffered by him and the resulting inability of Mr. James C. Brittain to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.    The disfigurement which he has suffered from the date of injury until the time of trial.

7.    The loss of household services which he has suffered from the date of injury until the time of trial.

8.    The reasonable value of nursing services which he has received from the date of injury until the time of trial.

## FUTURE DAMAGES OF JAMES C. BRITTAIN

31.0    From the time of the trial of this cause of action and in the future for the balance of his lifetime, the elements of damages which Plaintiff, James C. Brittain requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.    The physical pain which he will suffer throughout the remainder of his life.

2.    The mental anguish which he will suffer throughout the remainder of his life.

3.    The amount of reasonable medical expenses which he will necessarily incur in the treatment of injury throughout the remainder of his life.

17

4.    The loss or reduction of earning capacity which he will suffer throughout the remainder of his life.

5.    The physical impairment and disability which he will suffer and the resulting inability of Mr. James C. Brittain to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.    The disfigurement which he will suffer throughout the remainder of his life.

7.    The loss of household services which he will suffer throughout the remainder of his life.

8.    The reasonable value of nursing services which he will need throughout the remainder of his life.

## PAST DAMAGES OF JUAN BARRON

32.0    From the date of the injury made the subject of this suit, until the time of trial of this cause of action before a jury, the elements of damages which Plaintiff, Juan Barron, through his next friend, LORA MORALES requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.    The physical pain which he has suffered from the date of injury until the time of trial.

2.    The mental anguish which he has suffered from the date of injury until the time of trial.

3.    The reasonable medical expenses necessarily incurred by Ms. Morales in the treatment of his injuries from the date of injury until the time of trial.

4.    The loss of earnings and earning capacity sustained by him from the date of injury until the time of trial.

5.    The physical impairment and disability suffered by him and the resulting inability of Mr. Juan Barron to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

18

6.     The <u>disfigurement</u> which he has suffered from the date of injury until the time of trial.

7.     The <u>loss of household services</u> which he has suffered from the date of injury until the time of trial.

8.     The reasonable value of <u>nursing services</u> which he has received from the date of injury until the time of trial.

### FUTURE DAMAGES OF JUAN BARRON

33.0   From the time of the trial of this cause of action and in the future for the balance of his lifetime, the elements of damages which Plaintiff, Juan Barron, through his next friend, LORA MORALES requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.     The <u>physical pain</u> which he will suffer throughout the remainder of his life.

2.     The <u>mental anguish</u> which he will suffer throughout the remainder of his life.

3.     The amount of reasonable <u>medical expenses</u> which will be incurred on his behalf through age eighteen and as well the expenses he necessarily will incur in the treatment of injury throughout the remainder of his life.

4.     The <u>loss or reduction of earning capacity</u> which he will suffer throughout the remainder of his life.

5.     The <u>physical impairment and disability</u> which he will suffer and the resulting inability of Mr. Juan Barron to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.     The <u>disfigurement</u> which he will suffer throughout the remainder of his life.

7.     The <u>loss of household services</u> which he will suffer throughout the remainder of his life.

19

8.   The reasonable value of <u>nursing services</u> which he will need throughout the remainder of his life.

## PAST DAMAGES OF CHRIS CASTILLO

34.0   From the date of the injury made the subject of this suit, until the time of trial of this cause of action before a jury, the elements of damages which Plaintiff, Chris Castillo requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.   The <u>physical pain</u> which he has suffered from the date of injury until the time of trial.

2.   The <u>mental anguish</u> which he has suffered from the date of injury until the time of trial.

3.   The reasonable <u>medical expenses</u> necessarily incurred in the treatment of his injuries from the date of injury until the time of trial.

4.   The <u>loss of earnings and earning capacity</u> sustained by him from the date of injury until the time of trial.

5.   The <u>physical impairment and disability</u> suffered by him and the resulting inability of Mr. Chris Castillo to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.   The <u>disfigurement</u> which he has suffered from the date of injury until the time of trial.

7.   The <u>loss of household services</u> which he has suffered from the date of injury until the time of trial.

8.   The reasonable value of <u>nursing services</u> which he has received from the date of injury until the time of trial.

## FUTURE DAMAGES OF CHRIS CASTILLO

35.0   From the time of the trial of this cause of action and in the future for the balance of his lifetime, the elements of damages which Plaintiff, Chris Castillo requests this Court and jury to consider, separately and individually on his behalf, for the purpose of determining the full sum of money that will fairly and reasonably compensate him for each element are as follows:

1.   The physical pain which he will suffer throughout the remainder of his life.

2.   The mental anguish which he will suffer throughout the remainder of his life.

3.   The amount of reasonable medical expenses which he will necessarily incur in the treatment of injury throughout the remainder of his life.

4.   The loss or reduction of earning capacity which he will suffer throughout the remainder of his life.

5.   The physical impairment and disability which he will suffer and the resulting inability of Mr. Chris Castillo to engage in those activities and perform those tasks and services which he would have been able to do but for this tragic incident.

6.   The disfigurement which he will suffer throughout the remainder of his life.

7.   The loss of household services which he will suffer throughout the remainder of his life.

8.   The reasonable value of nursing services which he will need throughout the remainder of his life.

27.0   In consideration of all the elements of damage alleged herein, Plaintiff is entitled to be compensated in actual damages in a sum which greatly exceeds the minimum jurisdictional limits of this Honorable Court.

36.0   WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and that upon trial of the matter, Plaintiffs have judgment of and against the Defendants for each of their damages as described hereinabove, for prejudgment interest at the legal rate, for interest on the judgment at the legal rate, for all costs of Court, and

for such other and further relief, both general and special, whether at law or in equity, to which

Plaintiffs may show themselves to be justly entitled.

Respectfully submitted, subject to the Plaintiff's Motion for Leave of Court

this 7th day of February, 2006, by:

Bruce A. Craig
State Bar No. 04975270

THE CARLILE LAW FIRM
400 S. Alamo Street
Marshall, Texas 75670
(903) 938-1655
(903) 938-0235 (Fax)

AND

Reese P. Andrews
State Bar No. 01248800

ANDREWS & ANDREWS
311 East Main Street
Nacogdoches, Texas 75961
Telephone: (936) 564-5000
Facsimile: (936) 559-5000

ATTORNEYS FOR PLAINTIFFS

## Certificate of Service

This will certify that a rue and correct copy of same has been forwarded to all counsel of

record in accordance with the Federal Rules of Procedure and Local Rules for the Eastern

District of Texas by e-filing this 7th day of February, 2006.

Bruce A. Craig

22

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LYNN CASTILLO | § § | |
| LORA MORALES, INDIVIDUALLY AND A/N/F OF JUAN BARRON, A MINOR | § § § § | CIVIL ACTION NO. 2-05 CV 171-TJW Hon. Judge Ward Jury Trial Requested |
| JAMES C. BRITTAIN | § § | |
| NICASIO CASTILLO | § § | |
| VS. | § § | |
| FORD MOTOR COMPANY, AND MAZDA MOTOR CORPORATION | § § | |

## ORDER ON THE PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED PLEADING

CAME ON TO BE CONSIDERED, the Plaintiffs' Motion for Leave to file an Amended Complaint. The Court is of the opinion that the Motion should be GRANTED.

NOW THEREFORE, the Plaintiff's Motion for Leave to File their First Amended Complaint is GRANTED. The Clerk of the Court is instructed to accept the Plaintiffs' First Amended Complaint (attached to the Motion as Exhibit 2) for filing without further action by the Plaintiffs. It is further Ordered that the filing shall relate back to the date the Plaintiffs sought leave to file the Amended Complaint, February 7, 2006.

Signed this ___ day of _____, 2006.

_____
Hon. T. John Ward
United States District Judge

Approved and Entry Requested:

_____
Bruce A. Craig
Attorney for Plaintiffs